# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **GEORGE CARROLL, ET AL.** | : | **DOCKET NO. 2:05-cv-307** |
| **VS.** | : | **JUDGE MINALDI** |
| **PRAXAIR, INC.** | : | **MAGISTRATE JUDGE WILSON** |

## MEMORANDUM RULING

Currently before the court is a motion to compel made on behalf of plaintiff, George Carroll, by which he seeks to have the court order Praxair to produce documents in response to the following Requests for Production of Documents:

> 2. Any statements, recorded or written, or notes of interviews taken by defendants, their counsel, or any representative or investigator of defendant or their counsel regarding any facts, circumstances or other matters relating to the subject matter of this litigation.
>
> 4. Any and all accident/incident or investigative report(s) which were generated due to this release or accident.

Praxair objects to the requests for production, claiming that the documents covered by these requests are protected from discovery by the work-product doctrine because they were prepared in anticipation of litigation.[1]

This civil action arises out of an incident what occurred on March 20, 2004 at the Praxair facility in Westlake, Louisiana. Mr. Carroll was employed by Messer Greisham Industries as a truck driver, and on March 24, 2004, he entered the Praxair facility for the purpose of unloading liquid

---

[1] Praxair identifies the protected documents as: (1) an incident report dated March 21, 2004; (2) a Root Cause Analysis (RCA) report; (3) an RCA Timeline; and (4) an RCA Map. Additionally, there are written statements from three Praxair employees, Jerome Whiddon, Eric Broussard, and Steven Broussard.

nitrogen. Shortly after his arrival at the facility, Mr. Carroll was found unconscious near his truck by Praxair employees. Mr. Carroll was transported by ambulance to Christus St. Patrick Hospital in Lake Charles, Louisiana.

Praxair claims that because it expected litigation to be brought against it by Mr. Carroll, it immediately began an investigation of the accident's circumstances under the auspices of its Law Department. In doing so, the Praxair Law Department formed an investigation team within 24 hours of the accident and arranged to have all of the documents associated with the investigation marked "Confidential Attorney Client/Work Product Privilege." *See* Affidavit of Gary D. Williamson.

## LAW AND ANALYSIS

Although Praxair initially claimed that the documents in question were protected from discovery under both the attorney-client privilege and the work-product doctrine, Praxair has abandoned its claim of attorney-client privilege and invokes only the work-product doctrine to shield the documents from disclosure in discovery. *See* Doc. 23, p.3 & Doc. 25, p.2.

The work-product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure.[2] *Conoco v. Boh Brothers Construction Co.*, 191 F.R.D. 107, 117-18 (W.D. La. 1998); *Dunn,* 927 F.2d at 875. This doctrine protects from discovery documents and other tangible things prepared by a party or representative of a party, including attorneys, consultants, agents, or investigators in anticipation of litigation. *Boh Bros.*, 191 F.R.D. at 118; *Hickman v. Taylor,* 67 S.Ct. 385, 393-94 (1947). The work-product doctrine does not protect materials assembled in the ordinary course of business, pursuant to regulatory requirements, or for other non-litigation purposes.

---

[2]Although this is a diversity case, federal law is applicable to Praxair's claim that the requested documents are immune from discovery under the work-product doctrine. *See Dunn v. State Farm,* 927 F.2d 869, 875 (5th Cir. 1991) (a diversity case wherein the 5th Circuit applied state law to claims of attorney-client privilege and federal law to claims of work-product immunity); *Conoco v. Boh Brothers Construction Co.*, 191 F.R.D. 107, 118, n.6 (W.D. La. 1998); *See also* 6 Moore's Federal Practice, §26.70[7] (Matthew Bender 3d ed.)(work product doctrine is governed by the federal standard, even in diversity cases).

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992); *Guzzino v. Felterman,* 174 F.R.D. 59, 63 (W.D. La. 1997), citing *United States v. El Paso Co.,* 682 F.2d 530 (5th Cir. 1982); *Heath v. F/V Zolotoi*, 221 F.R.D. 545, 550 (W.D. Wa. 2004); *Pacamor Bearings, Inc. v. Minebea Co., Ltd.,* 918 F.Supp. 491, 512-13 (D.N.H. 1996); *Martin v. Valley National Bank of Arizona,* 140 F.R.D. 291, 304 (S.D.N.Y. 1991); *Sanders v. Alabama State Bar,* 161 F.R.D. 470 (M.D. Ala. 1995). The party who is seeking the protection of the work-product doctrine has the burden of proving that the documents were prepared in anticipation of litigation. *Boh Bros.,* 119 F.R.D. at 117; *In Re Leslie Fay Companies Securities Litigation,* 161 F.R.D. 274, 280 (S.D.N.Y., 1995)*; Pacamor Bearings,* 918 F.Supp. at 512.

The threshold determination that the court must make is whether the documents sought to be protected were, in fact, prepared in anticipation of litigation or whether they were prepared in the ordinary course of business. *Upjohn Co. v. United States,* 101 S.Ct. 677 (1981); *Caremark, Inc. v. Affiliated Computer Systems, Inc.,* 195 F.R.D. 610, 614 (N.D. Ill., 2000). The Fifth Circuit has indicated that a document is prepared in anticipation of litigation "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *United States v. Davis*, 636 F.2d 1028, 1039 (5th Cir. 1981). In determining the primary motivation for the creation of a document, courts look to various factors, including, "the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance." *Electronic Data Systems Corporation v. Steingraber*, 2003 WL 21653414, *5 (E.D. Tex. 2003), citing *Piatkowski v. Abdon Callais Offshore, LLC,* 2000 WL 1145825, *2 (E.D. La. 2000). "The involvement of an attorney is not dispositive of the 'in anticipation of litigation' issue. Nevertheless, involvement of an attorney is a highly relevant factor . . . making materials more likely

to have been prepared in anticipation of litigation." *Wikel v. Wal-Mart Stores, Inc.*, 197 F.R.D. 493, 495 (N.D. Ok. 2000).

However, the fact that a defendant anticipates litigation resulting from an incident does not automatically insulate investigative reports from discovery as work-product. *Wikel, supra.* "If the document would have been created regardless of whether litigation was expected to ensue, the document is deemed to have been created in the ordinary course of business and not in anticipation of litigation." *Electronic Data Systems,* 2003 WL 21653414, *5 citing Wright & Miller, Fed. Practice & Procedure § 2024. "The mere contingency that litigation may result is not determinative. If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is produceable in civil pre-trial discovery." *Binks Manufacturing Co. v. National Presto Industries, Inc.,* 709 F.2d 1109, 1119 (7th Cir. 1983), quoting *Janicker by Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C. 1982). As one court has observed:

> Following any industrial accident, it can be expected that designated personnel will conduct investigations, not only out of a concern for future litigation, but also to prevent reoccurrences, to improve safety and efficiency in the facility, and to respond to regulatory obligations. Determining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question.

*National Union*, 967 F.2d at 984; *see also Wikel,* 197 F.R.D. at 495.

If it is proven that the documents at issue were prepared in anticipation of litigation, they may still be subject to disclosure in discovery, but "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3); *Thomas v. General Motors Corp.,* 174 F.R.D. 386, 388 (E.D. Tx. 1997). The party who is seeking production of a document otherwise protected by the work product doctrine

4

bears the burden of establishing that the materials should be disclosed. *Hodges, Grant, & Kaufmann v. United States,* 768 F.2d 719, 721 (5th Cir. 1985); *Varel v. Banc One Capital Partners, Inc.,* 1997 WL 86457, *2 (N.D. Tex. 1997).

In support of its claim that the withheld documents were prepared in anticipation of litigation and are protected by the work-product doctrine, Praxair has submitted an affidavit from Gary D. Williamson, a Praxair Safety and Environmental Services Manager. In this affidavit, Mr. Williamson states:

6.  That he was part of a team of investigators that was formed by the Law Department to investigate the cause and circumstances of the accident involving Mr. Carroll.

7.  That the team was formed in anticipation of litigation and of claims of liability against Praxair and to prepare Praxair for trial with contemporaneously gathered evidence.

8.  That this investigation team was formed within 24 hours of the accident by the Praxair Law Department.

9.  That the Praxair Law Department not only arranged for the formation of the investigation team to address the causes of the Carroll accident in anticipation of litigation and claims of liability against Praxair and prepare Praxair for trial, the Praxair Law Department also arranged for all of the documents associated with the investigation to be marked "Confidential Attorney Client/Work Product Privilege."

10. That this designation underscored the extent to which the investigation of the Carroll accident was lawyer-driven and primarily designed to address claims of liability and expected litigation against Praxair.

From this evidence, it is clear that, within 24 hours of the accident involving Mr. Carroll, Praxair anticipated the possibility of litigation and that its law department became involved in the investigation of the accident.

In response to this evidence, Mr. Carroll counters that the investigation following his accident was conducted in the ordinary course of business. In support of this position, Mr. Carroll

has offered deposition testimony of Praxair employees, Eric Broussard, Reggie Knowles, Steve Broussard, Gary Wilson, and Jerome Whiddon, which indicates that investigations are routinely done following any accident that occurs at Praxair. *See* Plaintiff's Exhibits A pp.17-18; B p.14; C p.14; D p.12; and E p.16. Additionally, the deposition testimony of Gary Wilson indicates that as a result of the Root Cause Analysis (RCA), Praxair made certain changes in its operations. Specifically, after the RCA, Praxair changed its procedure with respect to how delivery drivers check in with their deliveries, placed restrictions on certain areas of the plant, upgraded the analyzers which monitor CO levels so that they automatically shut down the CO pumps if the CO levels reached 100 parts per million or more, upgraded the personal monitors used by employees, and provided delivery drivers with personal monitors and a Praxair escort. *See* Plaintiff's Exhibit D, pp.16-18.

Having considered the evidence submitted by both parties, the undersigned finds that Praxair has failed to establish that the primary motivating factor behind the investigation and the RCA was to aid in possible future litigation. While the involvement of Praxair's Law Department in the investigation supports a finding that the events were documented with the general possibility of litigation in mind, there is nothing before the court to indicate whether all investigations of accidents were conducted under the direction of the Praxair's Law Department or whether Praxair had a particularized reason to believe that litigation would result from this accident, thereby necessitating the involvement of its legal department. *See Miller v. Federal Express Corp.,* 186 F.R.D. 376, 387 (W.D.Tenn.,1999)("Absent additional circumstances, the fact that in every instance defendant's corporate counsel instructs employees involved with the GFTP/EEO investigation that the investigation is being launched in the anticipation of litigation does not ensconce it as work

product."); *Wikel*, 197 F.R.D. at 496 (focus shifted from routine investigation to anticipation of litigation when plaintiff told adjuster that he would get an attorney if the defendant did not pay his medical bills); *Heath,* 221 F.R.D. at 549-550 ("More than the mere possibility of litigation must be evident" for materials to be considered immune from discovery under the work-product doctrine.). Even if these documents were prepared with an eye towards litigation, it is evident that the RCA contains information which Praxair would be expected to compile in the ordinary course of its business after an accident has occurred in order to ascertain the cause of the accident, to evaluate equipment failures, and to implement changes in an effort to prevent similar accidents in the future. *See Poseidon Oil Pipeline Co. v. Transocean Sedco Forex,* 2001 WL 1360434, *4 (E.D. La. 2001); *Occidental Chemical Corp. v. OHM Remediation Services Corp.*, 175 F.R.D. 431, 435 (W.D.N.Y. 1997).

Accordingly,

IT IS ORDERED that Praxair produce the following documents to the plaintiff in response to his Request for Production of Documents, Numbers 2 & 4: (1) the incident report dated March 21, 2004; (2) the Root Cause Analysis (RCA) report, including the RCA Timeline and Map; and (3) written statements from Praxair employees, Jerome Whiddon, Eric Broussard, and Steven Broussard.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, June 28, 2006.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE