RECEIVED
IN LAKE CHARLES, LA

FEB - 7 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA




# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **GEORGE CARROLL, ET AL** | : | **DOCKET NO. 05-0307** |
| **VS.** | : | **JUDGE MINALDI** |
| **PRAXAIR, INC.** | : | **MAGISTRATE JUDGE WILSON** |

## MEMORANDUM RULING

Currently before the court is a motion for protective order made on behalf of defendant Praxair, Inc. ("Praxair") to prevent plaintiff George Carroll ("Carroll") from deposing Lake Charles neurologist Dr. Alan Sconzert, who performed an independent medical examination upon Carroll on Praxair's behalf.[1]  Praxair objects to the discovery deposition based on Fed. R. Civ. P. 26(b)(4)(B), as Dr. Sconzert will not be testifying for the defendant at trial,[2] and as depositions of non-testifying experts are allowed only in exceptional circumstances, which Praxair alleges are lacking here.  Carroll's opposition to the motion claims that as Dr. Sconzert was listed on Praxair's original witness list, he is entitled to depose Dr. Sconzert and to present his testimony at trial.

This civil action arises out of an employment-related accident at the Praxair facility in Westlake, Louisiana.  Carroll was employed by Messer Greisham Industries as a truck driver, and on March 24, 2004 he entered the Praxair facility to unload liquid nitrogen.  Shortly after his

---

[1] The motion has been referred to the undersigned for decision pursuant to 28 U.S.C. § 636(b)(1)(A).

[2] *See* Letter stating "emphatically and irrevocably" that Dr. Sconzert would not be called to testify at trial. Letter, Alan Dean Weinberger to Robert C. McCall, January 30, 2007 [doc. # 73-6, pp. 3-5].

arrival at the facility, Carroll was found unconscious near his truck by Praxair employees. Carroll was transported by ambulance to Christus St. Patrick Hospital in Lake Charles, Louisiana, and was tested and treated symptomatically for substantial exposure to carbon monoxide. Pulmonologist Dr. Gary Kohler treated Carroll at Christus St. Patrick and made a final diagnosis of carbon monoxide poisoning, respiratory failure, shock, atherosclerotic cardiovascular disease, stress-induced hyperglycemia, possible obstructive sleep apnea and rhabdomyolysis secondary to carbon monoxide poisoning. Upon discharge, Carroll was referred to various physicians (Defendant's Exhibit 1 [doc. # 35, Exhibits]), and continues to be treated for several medical conditions.

The instant suit was filed on January 14, 2005 in the 14th Judicial District Court, Calcasieu Parish, State of Louisiana, and was removed to federal court on February 18, 2005, on the basis of diversity jurisdiction. 28 U.S.C. § 1332. By letter dated March 14, 2005, Carroll et al consented to removal.

In light of the lawsuit, and in accordance with Fed. R. Civ. P. 35, Dr. Sconzert was retained by the defendant to perform an independent medical examination ("IME") upon the plaintiff, Carroll, which examination took place on June 28, 2006. The report of Dr. Sconzert's IME was furnished to the plaintiff[3] as was a witness list which included Dr. Sconzert, who "may [be called upon to] testify regarding the independent medical examination he preformed [sic] on Mr. Carroll" (Defendant Praxair's Witness List, September 7, 2006 [doc.# 75-2]). Carroll noticed a deposition for Dr. Sconzert, presently scheduled for February 9, 2007. Praxair sought

---

[3] Neither party has indicated when the IME report was initially furnished to the plaintiff. The record shows a copy of the report was filed as an exhibit attached to the instant motion. The report follows a fax cover sheet dated 8-11-06 [doc. # 73-5].

an expedited hearing on its motion for protective order to quash the deposition of Dr. Sconzert, and a telephone conference on the motion was held on February 1, 2007. Trial in this matter is set for February 26, 2007 before Judge Patricia Minaldi in Lake Charles.

## LAW AND ANALYSIS

Federal Rule of Civil Procedure 26 governs discovery, and states that

"[a] party may . . . discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which is it impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(B) (emphasis added).

Federal Rule of Civil Procedure 35 governing mental and physical examinations states that

"[i]f requested . . . by the person examined, the party causing the examination to be made shall deliver to the requesting party a copy of the detailed written report of the examiner setting out the examiner's findings, including results of all tests made, diagnoses, and conclusions. . . .[Receipt of the report] does not preclude . . . the taking of a deposition of the examiner in accordance with the provisions of any other rule." Fed. R. Civ. P. 35(b)(1) & (3).

The specific language of Rule 35 indicates that if a party is subjected to a physical examination, the party is entitled to a detailed written report of that examination, but no more. The Rule could have stated that the party is also entitled to depose the examiner, but it does not, and there is no indication in the rule that participating in a physical examination entitles the examined party to a deposition of the examiner as well as a report of the examination.[4]

---

[4] Carroll argues that a few courts in Maryland have considered the examined party to be entitled to discovery beyond the expert report; the court in *Crowe v. Nivision*, 145 F.R.D. 657 (D. Md. 1993) found that "in return for suffering an invasion of his person, the examined party is entitled to make use of such information as results from the examination." Following our reasoning above, we find this argument unpersuasive.

3

Furthermore, while Rule 35 does not preclude depositions of examiners, it limits depositions to those which are permitted in accordance with the provisions of other rules. The examined party's entitlement, therefore, is limited to the examiner's report of the examination. We find, therefore, that while Rule 35 will allow a deposition that does not contravene any other rule, the limitations of other rules will control the taking of depositions of examination-conducting expert witnesses.

Rule 26(b)(4) controls trial preparation matters involving experts. In the case of an expert who will not be a witness at trial, the parties are limited in their discovery practices to those methods referred to in Rule 35(b), which in this case is a limitation to the report of the expert. The only exception to this limitation is that upon a showing of exceptional circumstances, the parties may have recourse to other means of discovery, including depositions. "A party seeking to show exceptional circumstances under Rule 26(b)(4)(B) carries a heavy burden." *Hoover v. U. S. Dep't of the Interior*, 611 F. 2d 1132, 1142 n. 13 (5th Cir. 1980). "This Rule recognizes that with non-testifying experts, there is no need to obtain discovery for effective cross-examination." *In re Shell Oil Refinery*, 132 F.R.D. 437 (E.D. La. 1990) (*quoting Hoover v. U. S. Dep't of the Interior*, at 1142 (5th Cir. 1980) which states that "[t]he primary purpose of [Rule 26(b)(4)(A)'s required disclosures about experts expected to be called at trial] is to permit the opposing party to prepare an effective cross-examination."). In this case, the defendant's decision to withdraw Dr. Sconzert from its witness list has been made in no uncertain terms. Weinberger to McCall Letter, *supra* note 2. Therefore, the plaintiff must show exceptional circumstances that would justify permitting him to take Dr. Sconzert's deposition.

In considering the purpose of limiting discovery of non-testifying experts' information,

4

the court in *Rubel v. Eli Lilly & Co.* identified four rationales: First, counsel's interest in obtaining advice to properly evaluate and present their clients' positions without fear that every consultation with an expert might "yield grist for the adversary's mill"; second, "that it would be unfair to allow a party to benefit from the effort and expense incurred by the other in preparing its case"; third, that compelling experts' testimony "might diminish the willingness of experts to serve as consultants, and . . . that it is unfair to the experts"; and fourth, that "permitting one party to call an expert previously retained or consulted by the other side entails a risk of very substantial prejudice stemming from the fact of the prior retention, quite apart from the substance of the testimony." *Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458, 460 (S.D.N.Y. 1995). All four rationales are implicated in the instant case.

"The exceptional circumstances requirement has been interpreted by courts to mean an inability to obtain equivalent information from other sources." *In re Shell Oil Refinery*, at 442 (citations omitted). In the instant case, the parties have indicated that the report of the non-testifying expert is similar in almost all respects to the conclusions stated by the regular treating physicians who have had the care of Mr. Carroll since the accident. Telephone conference, February 1, 2007, Alan Dean Weinberger, Robert McCall, and United States Magistrate Judge Alonzo P. Wilson. There is no suggestion that Carroll was denied access to the information that Dr. Sconzert could offer from other sources, or that he was unable to obtain equivalent information from other sources, and in fact, virtually the same information is to be presented through the testimony of Carroll's own physicians. Apart from other considerations, this would tend to make any information Dr. Sconzert might offer redundant and wasteful of the court's time and resources. The more likely use by the plaintiff would be to show that the defendant's

expert agreed with the plaintiff's physicians as to Carroll's health and symptoms, in order to undermine a defense argument rebutting such facts. But this type of use offers a far greater likelihood of having a prejudicial effect than of having probative value, running, as it does, "the substantial risk of 'explosive' prejudice stemming from the fact of the prior retention of an expert by the opposing party. *Rubel v. Lilly*, 160 F.R.D. at 460 (quoting 8 C. Wright et al, *Federal Practice and Procedure: Civil* § 2032, at 447 (1994). With potential prejudice far outweighing probative value, the evidence of the defendant's doctor's accord with the conclusions of the plaintiff's doctors would not be admitted at trial.

Finally, as this is a diversity case, the court must apply Louisiana law, which expresses a preference for the testimony of a treating physician over that of a specially retained examiner who has seen the plaintiff only once. *Kelone v. Pinecrest State Sch.* (La. App. 3 Cir. 1993) 626 So. 2d 89 p.91; *Kay v. Home Indemnity Co.*, La. App. 3rd Cir. 1975), 313 So. 2d 303; *Bourque v. Vallot*, (La. App. 3rd Cir. 1973), 286 So. 2nd 163, 165; *Lockhart v. Pargas, Inc.* (La. App. 1st Cir. 1972), 271 So.2d 664. Furthermore, Louisiana law allows for a jury instruction that greater weight should be given to the testimony of treating physicians than that of single visit examiners. *Kennedy v. Thomas*, 34,530 (La. App. 2nd Cir. 4/4/01), 784 So. 2d 692 ("Where the testimony of medical experts conflicts, it is permissible for the trier of fact to give greater weight to the testimony of a treating physician over the testimony of a doctor whose examination was made solely for the purpose of giving expert trial testimony regarding a patient's condition.")

As we noted earlier, Carroll has listed several treating physicians among his anticipated witnesses, whose testimony is anticipated to be the same or substantially similar to the testimony that Dr. Sconzert would offer were he to have been asked to testify at trial. No relevant purpose

can be served by allowing Carroll to depose Dr. Sconzert at this stage of the proceedings.

The heavy burden faced by the party attempting to show exceptional circumstances and thereby justifying the party's deposition of an opponent's non-testifying expert cannot be met where, as here, the testimony is likely to be redundant, cumulative, prejudicial, and of lesser weight than that of the plaintiff's own doctors. We find that the plaintiff has not identified any exceptional circumstances that would justify continuing with the deposition as scheduled for February 9, 2007.

Accordingly,

IT IS ORDERED that the motion for protective order is GRANTED, and therefore the deposition of Dr. Alan Sconzert now scheduled for February 9, 2007 is quashed and may not be taken by the plaintiff.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 7th day of February, 2007.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE